UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| PATRICK JULES | : | BK. No. 13-20166 REF |
| A/K/A PATRICK G. JULES | : | |
| A/K/A PATRICK GREGORIE JULES | : | Chapter No. 13 |
| Debtor | : | |
| | : | |
| GREEN TREE SERVICING LLC, AS | : | |
| AUTHORIZED SERVICER OF FANNIE MAE, AS | : | |
| OWNER AND HOLDER OF | : | |
| ACCOUNT/CONTRACT ORIGINATED BY | : | |
| COUNTRYWIDE HOME LOANS, INC. | : | |
| Movant | : | |
| | : | |
| v. | : | |
| PATRICK JULES | : | |
| A/K/A PATRICK G. JULES | : | |
| A/K/A PATRICK GREGORIE JULES | : | |
| Respondent | : | |

**OBJECTION OF GREEN TREE SERVICING LLC, AS AUTHORIZED SERVICER OF
FANNIE MAE, AS OWNER AND HOLDER OF ACCOUNT/CONTRACT ORIGINATED
BY COUNTRYWIDE HOME LOANS, INC.  TO
CONFIRMATION OF THE DEBTOR'S CHAPTER 13 PLAN**

Movant, **GREEN TREE SERVICING LLC, AS AUTHORIZED SERVICER OF FANNIE MAE,
AS OWNER AND HOLDER OF ACCOUNT/CONTRACT ORIGINATED BY COUNTRYWIDE
HOME LOANS, INC.**  (hereinafter referred to as "Movant"), by its attorneys Phelan Hallinan, LLP hereby
objects to confirmation of the Debtor's Chapter 13 Plan as follows:

1.    Movant is **GREEN TREE SERVICING LLC, AS AUTHORIZED SERVICER OF
FANNIE MAE, AS OWNER AND HOLDER OF ACCOUNT/CONTRACT ORIGINATED BY
COUNTRYWIDE HOME LOANS, INC.** .

2.    Debtor, PATRICK JULES A/K/A PATRICK G. JULES A/K/A PATRICK GREGORIE
JULES, is the owner of the property located at 5551 SPRING RIDGE DRIVE WEST, MACUNGIE, PA
18062-9569.

3.    On March 10, 2014, Movant filed a Proof of Claim listing pre-petition arrears in the amount of
$2,072.02.  A copy of the Proof of Claim is attached hereto as Exhibit "A" and made a part hereof.

4.    Debtor's Plan fails to cure the delinquency pursuant to 11 U.S.C. §1322(b)(5).

5.    Debtor's Plan fails to list Movant as a secured creditor and does not provide for payment of
arrears to Movant.  A copy of Debtor's Plan is attached hereto as Exhibit "B" and made a part hereof.

6.    Movant objects to Debtor's Plan as it is underfunded. Debtor's Plan should be amended to list
Movant as a secured creditor and to fully fund the arrears owed to Movant. In the alternative, Debtor's Plan
should be amended to state the property will be surrendered. Confirmation of Debtor's Plan should be denied.

WHEREFORE, **GREEN TREE SERVICING LLC, AS AUTHORIZED SERVICER OF FANNIE MAE, AS OWNER AND HOLDER OF ACCOUNT/CONTRACT ORIGINATED BY COUNTRYWIDE HOME LOANS, INC.** respectfully requests that this Honorable Court deny confirmation of the Debtor's Chapter 13 Plan.

Respectfully Submitted,

/s/ Troy Sellars, Esquire
Troy Sellars, Esq., Id. No.210302
Phelan Hallinan, LLP
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
Phone Number: 215-563-7000 Ext 1360
Fax Number: 215-568-7616
Email: troy.sellars@phelanhallinan.com

Dated: March 27, 2014

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| PATRICK JULES | : BK. No. 13-20166 REF |
| A/K/A PATRICK G. JULES | : |
| A/K/A PATRICK GREGORIE JULES | : Chapter No. 13 |
|          Debtor | : |
| | : |
| GREEN TREE SERVICING LLC, AS | : |
| AUTHORIZED SERVICER OF FANNIE MAE, AS | : |
| OWNER AND HOLDER OF | : |
| ACCOUNT/CONTRACT ORIGINATED BY | : |
| COUNTRYWIDE HOME LOANS, INC. | : |
|          Movant | : |
|         v. | : |
| PATRICK JULES | : |
| A/K/A PATRICK G. JULES | : |
| A/K/A PATRICK GREGORIE JULES | : |
|         Respondent | : |

## ORDER

     **AND NOW**, this       day of             , 2014, upon consideration of the Debtor's

Chapter 13 Plan, and the objection of GREEN TREE SERVICING LLC, AS AUTHORIZED SERVICER OF

FANNIE MAE, AS OWNER AND HOLDER OF ACCOUNT/CONTRACT ORIGINATED BY

COUNTRYWIDE HOME LOANS, INC. , and after hearing, it is hereby

     **ORDERED** that confirmation of the Debtor's Chapter 13 Plan is denied.

                             **BY THE COURT:**

                           _____

                           **RICHARD E. FEHLING**
                           **U.S. Bankruptcy Judge**

FREDERICK L. REIGLE, ESQUIRE (TRUSTEE)
2901 ST. LAWRENCE AVENUE
P.O. BOX 4010
READING, PA 19606

BARTON KNOCHENMUS, ESQUIRE
KNOCHENMUS LAW FIRM
1275 GLENLIVET DRIVE, SUITE 100
ALLENTOWN, PA 18106

UNITED STATES TRUSTEE
833 CHESTNUT STREET
SUITE 500
PHILADELPHIA, PA 19107

PATRICK JULES
PO BOX 637
OREFIELD, PA 18069

B 10(Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF PENNSYLVANIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor: PATRICK JULES | Case Number:<br>13-20166 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You May file a request for payment of an administrative expense according to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Green Tree Servicing LLC, as authorized servicer for Fannie Mae, as owner and holder of account/contract originated by COUNTRYWIDE HOME LOANS, INC.

**Court Use Only**

Name and address where notices should be sent:
Green Tree Servicing LLC
P.O. Box 6154
Rapid City, SD 57709-6154

Telephone number: 888-298-7785      email: pocteam@gt-cs.com

☐ Check this box if the claim amends a previously filed claim.
**Court Claim Number:**

Filed on:

Name and address where payment should be sent: (if different from above):
Green Tree Servicing LLC
PO BOX 0049
Palatine, IL 60055-0049

Telephone number: 888-298-7785      email: pocteam@gt-cs.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** <u>$165,432.26</u>

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principle amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: <u>Money Loaned</u>
(See instruction # 2)

| 3. Last four digits of any number by which creditor identifies debtor:<br><u>0473</u> | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction # 3b) |
|---|---|---|

**4. Secured Claim (See instruction # 4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed included in secured claim, if any:
$2,072.02

**Nature of Property or right of setoff:** ☒ Real Estate    ☐ Motor Vehicle    ☐ Other

**Describe:** Deed of Trust, Mortgage, Note for 5551 SPRING RIDGE DR W, MACUNGIE, PA 18062 (the 'Collateral').
**Basis for perfection:** arrears through 11/21/2013, ongoing monthly payments of $1,215.33
**Value of Property:** $165,432.26      **Amount of Secured Claim:** $165,432.26
**Annual Interest Rate** 4.62500%      **Amount Unsecured:** $0.00
(when case was filed)    ☒ Fix    ☐ Variable

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

Domestic Support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4).

Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).
Amount entitled to priority:
$N/A

Up to $2,775* of deposits toward Purchase, lease, or rental of property, or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

Taxes or penalties owed to governmental units - 11. U.S.C §507 (a)(8).

Other – Specify $N/A applicable paragraph of 11. U.S.C §507(a)(_)

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to case commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction # 6)

13-20166 ****0473

B(10(Official Form 10) (04/13)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). Documentation provided is in support of right to seek a lift of stay and foreclosure if necessary. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction # 8)
Check the appropriate box.

| ☐ I am the creditor. | ☒ I am the creditor's authorized agent. | ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) | ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.) |

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information and reasonable belief.

Print Name: KELLI ELEESON
Title: Bankruptcy Representative
Company: Green Tree Servicing LLC
Address and telephone number (if different from address above)
P.O. Box 6154
Rapid City, SD 57709-6154

/s/ KELLI ELEESON     03/06/2014

(Signature)          (Date)

Telephone number: 888-298-7785          E-mail: pocteam@gt-cs.com

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g)

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering healthcare goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure or confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of any number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check the box if the claim is fully or partially secures. Skip this section if the claim is entirely unsecured. (See Definition.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005 (a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purpose of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement of claim.

13-20166 ****0473

B(10(Official Form 10) (04/13)

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

B(10(Official Form 10) (04/13)

## Mortgage Proof of Claim Attachment

If you hold a claim secured by a security in the debtor's principle residence, you must use this form as an attachment
to your proof of claim. See Bankruptcy Rule 3001 (c)(2)

Name of debtor: PATRICK JULES

Case Number:       13-20166

Name of creditor: Green Tree Servicing LLC, as authorized servicer for Fannie Mae, as owner and holder of loan/contract originated by COUNTRYWIDE HOME LOANS, INC.

Last four digits of any number you
use to identify the debtor's account:    0473

---

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (include in the Amount of Claim listed in Item 1 on your
Proof of Claim form).

1. Principal due                             $163,075.73

2. Interest due

| Interest Rate | From     To | Amount |
|---|---|---|
| | mm/dd/yyyy – mm/dd/yyyy | |
| 4.62500% | 05/26/2005-11/21/2013 | $1,041.93 |
| % | | $ |
| % | | $ |
| % | | $ |
| % | | $ |

Total interest due as of the petition date +$1,041.93        Copy total here ▶ +$1,041.93

3. Total principal and
   Interest due                        $ 164,117.66

---

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges incurred in connection with the claim as of the petition date (included in the Amount of
Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | Amount |
|---|---|---|
| Late charges | 11/17/2013 | $37.87 |
| Non-sufficient funds (NSF) fees | | $0.00 |
| Attorney's fees | | $0.00 |
| Filing fees and court costs | | $0.00 |
| Advertisement costs | | $0.00 |
| Sheriff/auctioneer fees | | $0.00 |
| Title costs | | $0.00 |
| Recording fees | | $0.00 |
| Appraisal/broker's price opinion fees | | $0.00 |
| Property inspection fees | | $0.00 |
| Tax advances (non-escrow) | | $0.00 |
| Insurance advances (non-escrow) | | $0.00 |
| Escrow shortage or deficiency (not included in payments due) | 11/21/2013 | $1,276.73 |
| Property preservation expenses. Specify: ____ | | $0.00 |
| Other. Specify: _ | | $0.00 |
| Other. Specify: _ | | $0.00 |
| Other. Specify: _ | | $0.00 |

Total prepetition fees, expenses and charges. Add all of the amounts listed above      $1,314.60

13-20166 ****0473

Case 13-20166ef Clooc6 23-2 L Fiileed0203071/4/1E nEntered0003/07/04/077 1511 PageseB dof 36
Exhibit Docum eoof of Chaigee 9 RaigeS5 of 36

B(10(Official Form 10) (04/13)

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

- [ ] No
- [X] Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable non bankruptcy law.

1. Installment payments due

   Date last payment received by creditor    10/17/2013

   Number of installment payments due    1

2. Amount of installment Payment due

| | | |
|---|---|---|
| 1 | Installments@ | $757.42 |
| | Installments@ | $ |
| | Installments@ | $ |
| | Installments@ | $ |
| | Installments@ | +$ |

Total installment payments due as of

the petition date    $757.42

Copy total here ▶ $757.42

Add total prepetition fees, expenses, and charges    Copy total from
Part 2 here ▶ + $ 1,314.60

Subtract total of unapplied funds (funds received but not    - $0.00

credited to account)

Total amount necessary to cure default as of the petition date

| $2,072.02 |
|---|

Copy total onto Item 4
of Proof of Claim form

Post petition payment due date: 12/1/2013
Post petition payment amount due: $1,215.33

13-20166 ****0473

**\*\*\* This form is for informational purposes only and is not a supplement to the Proof of Claim\*\*\***

Arrearage Statement for:

| **Customer Name(s):** | JULES |
|---|---|
| **Case #:** | **13-20166** |

| | |
|---|---|
| Secured Amount on POC | $165,432.26 |
| Interest Rate on Note: | 4.62500% |
| Monthly Principle & Interest pmt due each month: | $757.42 |
| Monthly Physical Damage Insurance due each month: | $0.00 |
| Monthly Escrow due each month: | $457.91 |
| Total Monthly Payment due each month for contract maintenance: | **$1,215.33** |

| | SECURED ARRS | | | | | UNSECURED ARRS | |
|---|---|---|---|---|---|---|---|
| Date due: | Principal | Interest | FP Ins | Escrow | Total | Opt. Ins. | Voluntary Ins. |
| 11/1/2013 | 128.90 | 628.52 | 0.00 | 0.00 | 757.42 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Unapplied Funds | | | | | 0.00 | | |
| Late Charges | | | | | 0.00 | | |
| 11/17/2013 | | | | | 37.87 | | |
| NSF Fees | | | | | | | |
| | | | | | 0.00 | | |
| Atty Fees | | | | | | | |
| | | | | | 0.00 | | |
| Filing Fee/Court Cost | | | | | | | |
| | | | | | 0.00 | | |
| Advertising Cost | | | | | | | |
| | | | | | 0.00 | | |
| Sherrif/Auction Fee | | | | | | | |
| | | | | | 0.00 | | |
| Title Cost | | | | | | | |
| | | | | | 0.00 | | |
| Recording Fees | | | | | | | |
| | | | | | 0.00 | | |
| Appraisal/BPO Fee | | | | | | | |
| | | | | | 0.00 | | |
| Prop Inspection | | | | | | | |
| | | | | | 0.00 | | |
| Tax Adv (Non-Escrow) | | | | | | | |
| | | | | | 0.00 | | |
| Ins. Adv (Non-Escrow) | | | | | | | |
| | | | | | 0.00 | | |

| | | | |
|---|---|---|---|
| Escrow Shortage | | | |
| 11/21/2013 | 1,276.73 | | |
| Prop Preservation | | | |
| | 0.00 | | |
| Other 1 | | | |
| | 0.00 | | |
| Other 2 | | | |
| | 0.00 | | |
| Other 3 | | | |
| | 0.00 | | |
| **Total Arrearages** | **$2,072.02** | 0.00 | 0.00 |

Attachment to Proof of Claim

**Claimant is in the process of obtaining [assignment of mortgage] from the document custodian and will supplement this Proof of Claim or file an Amended Proof of Claim, as necessary, when those documents become available.**

Prepared by: BARBARA SENG

LOAN #: ▉▉▉▉▉▉

# NOTE

MAY 26, 2005                                                    PENNSYLVANIA
[Date]                              [City]                      [State]

5551 SPRING RIDGE DR W, MACUNGIE, PA 18062
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 155,072.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST            day of each month beginning on
JULY 01, 2005        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 01, 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,018.71    .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: _____

Page 1 of 2

VMP ®-5N (0207).01    CHL (010/04)(d)    VMP Mortgage Solutions, Inc. (800)521-7291    Form 3200 1/01




3

LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY
David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  _____ (Seal)
PATRICK JULES          -Borrower                            -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                            -Borrower

*[Sign Original Only]*

# 1-4 FAMILY RIDER
## (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:

Prepared By:
BARBARA SENG

[Escrow/Closing #]          [Doc ID #]

**MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 1 of 5



VMP®-57R (0401).01  CHL (06/04)(d)                                    Initials: _____
VMP Mortgage Solutions, Inc. (800)521-7291              Form 3170 1/01

7267018
Page: 6 of 23
05/31/2005 01:58PM

DOC ID #: ▓▓▓▓▓▓▓▓▓

        THIS 1-4 FAMILY RIDER is made this TWENTY-SIXTH day of, MAY, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

       5551 SPRING RIDGE DR W, MACUNGIE, PA 18062

[Property Address]

    **1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

    **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

    **B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

    **C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

    **D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Initials:

**VMP** -57R (0401).01    **CHL (06/04)**    Page 2 of 5                **Form 3170 1/01**

7267018
Page: 7 of 23
05/31/2005 01:58PM

DOC ID #: ████████████

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Initials: _____

VMP®-57R (0401).01  **CHL (06/04)**          Page 3 of 5          Form 3170 1/01

DOC ID #: ████████

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

7267018
Page: 9 of 23
05/31/2006 01:58PM

Initials: _____

-57R (0401).01 CHL (06/04)          Page 4 of 5          Form 3170 1/01

DOC ID #: ██████████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.



_____ (Seal)
PATRICK JULES                                                                                    - Borrower

_____ (Seal)
                                                                                                          - Borrower

_____ (Seal)
                                                                                                          - Borrower

_____ (Seal)
                                                                                                          - Borrower

VMP -57R (0401).01 CHL (06/04)            Page 5 of 5                        Form 3170 1/01

7267018
Page: 10 of 23
05/31/2005 01:58PM

LJS

JMA

Penn Title Inc
3015 College H██████ ████
Allentown, Pa. 18104

Prepared By:
BARBARA SENG
COUNTRYWIDE HOME LOANS, INC.



3761 NICHOLAS ST
EASTON
PA 18045

MAIL

Phone: ███████
After Recording ████████
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Parcel Number:

---

[Space Above This Line For Recording Data]

[Escrow/Closing #]                    [Doc ID #]

MORTGAGE
MI████████████████

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 17                                                    Initials: ____

-6A(PA) (0407)     CHL (08/04)(d)     VMP Mortgage Solutions, Inc. (800)521-7291          Form 3039 1/01





This Document Recorded
05/31/2005
01:58PM
Doc Code: MTG          Lehigh County, PA Recorder of Deeds Office

Doc Id: ██████
Receipt #: 188535
Rao Fee: 78.00

7267018
Page: 1 of 23
05/31/2005 01:58PM

DOC ID #

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **MAY 26, 2005**, together with all Riders to this document.

**(B) "Borrower"** is

PATRICK JULES, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is

COUNTRYWIDE HOME LOANS, INC.

Lender is a CORPORATION

organized and existing under the laws of NEW YORK

Lender's address is

4500 Park Granada, Calabasas, CA 91302-1613

**(E) "Note"** means the promissory note signed by Borrower and dated **MAY 26, 2005**

The Note states that Borrower owes Lender

ONE HUNDRED FIFTY FIVE THOUSAND SEVENTY TWO and 00/100

Dollars (U.S. $ 155,072.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JUNE 01, 2035.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | LEGAL DESCRIPTION |

Initials:

Form 3039 1/01

VMP -6A(PA) (0407)          CHL (08/04)          Page 2 of 17

DOC ID #

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns

Initials:

Form 3039 1/01

7267018
Page: 3 of 23
05/31/2005 01:56PM

of MERS, the following described property located in the         DOC ID #: [redacted]

       COUNTY      of          LEHIGH           :
      [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of
        5551 SPRING RIDGE DR W, MACUNGIE            ,
                     [Street/City]
Pennsylvania    18062       ("Property Address"):
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.

                                             Initials: _____

VMP -6A(PA) (0407)    CHL (08/04)        Page 4 of 17                      Form 3039 1/01

Prepared by: BARBARA SENG

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: ▓▓▓▓▓▓▓
3761 NICHOLAS ST
EASTON, PA 18045

DATE: 05/26/2005
CASE #: ▓▓▓▓▓▓▓▓▓▓
DOC ID #: ▓▓▓▓▓▓▓▓▓▓
Phone: ▓▓▓▓▓▓▓▓▓
Br Fax No.: ▓▓▓▓▓▓▓▓

BORROWER: PATRICK JULES
PROPERTY ADDRESS: 5551 SPRING RIDGE DR W
MACUNGIE, PA 18062

## LEGAL DESCRIPTION EXHIBIT A

**ALL THAT CERTAIN** messuage and tract, piece or parcel of land situate in the Township of Lower Macungie, County of Lehigh and Commonwealth of Pennsylvania, as shown on a record plan entitled Spring Ridge Crossing, dated May 24, 2000, prepared by Lehigh Engineering Associates, Inc., being Lot 10, bounded and described as follows, to wit:-

**BEGINNING** at an iron pin located in and along the common boundary line of the ultimate roadway right-of-way line of Spring Ridge Drive West, 30.00' east of and parallel to centerline, and in and along Lot 9 in the Subdivision of Spring Ridge Crossing, and the lands herein described, thence;

1.  North 18° 51' 18" East, 25.00' in and along the ultimate roadway right-of-way line of Spring Ridge Drive West, 30.00' east of and parallel to centerline, to an iron pin; thence,

2.  South 71° 08' 42" East, 119.95' along Lot 11 in the Subdivision of Spring Ridge Crossing, to an iron pin; thence,

3.  South 18° 51' 18" West, 25.00' along Lot 55 in the Subdivision of Spring Ridge Crossing, to an iron pin; thence

4.  North 71° 08' 42" West, 119.95' along Lot 9 in the Subdivision of Spring Ridge Crossing, to the aforementioned point and place of **BEGINNING.**

**CONTAINING:** 2,998.75 sq. ft.

**BEING THE SAME PREMISES** which Spring Ridge Crossing L.L.C., by it Managing Member, The Peter DePaul Irrevocable Trust under Agreement dated December 12, 1979, by Donna DePaul-Bartynski, Trustee, by their Indenture of even date herewith and intended to be simultaneously recorded, did grant and convey unto Patrick Jules, Unmarried, in fee.

FHA/VA/CONV
*   Legal Description Exhibit A
1C404-XX (04/03)(d)




7267018
Page: 5 of 23
05/31/2005 01:56PM

DOC ID #: ████████████

However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and

Initials: ____

VMP ®  -6A(PA) (0407)          CHL (08/04)              Page 5 of 17                                Form 3039  1/01

DOC ID #: ████████

Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: ___

Form 3039 1/01

**VMP** -6A(PA) (0407)          CHL (08/04)          Page 6 of 17

DOC ID #:

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Initials:

VMP®-6A(PA) (0407)          CHL (08/04)          Page 7 of 17          Form 3039 1/01

DOC ID #: ████████

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials:

7267018
Page: 14 of 23
05/31/2005 01:58PM

DOC ID # █████████████

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan

Initials: _____

DOC ID #: ███████████

is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or

Initials: ___

VMP ®-6A(PA) (0407)     CHL (08/04)          Page 10 of 17                          Form 3039 1/01

repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of

Initials: _____

VMP ®  -6A(PA) (0407)          CHL (08/04)                     Page 11 of 17                                                         Form 3039  1/01

DOC ID #: ███████████

Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by

Initials: _____

VMP -6A(PA) (0407)          CHL (08/04)          Page 12 of 17          Form 3039 1/01

7267018
Page: 18 of 23
05/31/2005 01:58PM

this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,

Initials: _____

DOC ID #:

instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials:

Form 3039 1/01

VMP -6A(PA) (0407)    CHL (08/04)    Page 14 of 17

7267018
Page: 20 of 23
05/31/2005 01:58PM

DOC ID # ███████████

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

DOC ID # 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
PATRICK JULES                                                                    -Borrower

_____        _____ (Seal)
                                                                                             -Borrower

                                                        _____ (Seal)
                                                                                             -Borrower

                                                        _____ (Seal)
                                                                                             -Borrower

7267018
Page: 22 of 23
05/31/2005 01:58PM

DOC ID #: ████████████

COMMONWEALTH OF PENNSYLVANIA,       Lehigh          County ss:

On this, the ___26th___ day of ___May, 2005_____, before me, the undersigned officer, personally appeared_____
_____PATRICK JULES_____
_____
_____
_____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

*Debra A. Detweiler*

___Notary Public_____
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Debra A. Detweiler, Notary Public
City of Allentown, Lehigh County
My Commission Expires Nov. 22, 2007
Member, Pennsylvania Association of Notaries

**Certificate of Residence**
I,_____, do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this _____26th_____ day of _____May, 2005_____.

*Debra A. Detweiler*

Agent of Mortgagee

VMP -6A(PA) (0407)    CHL (08/04)       Page 17 of 17      Initials: PJ      Form 3039 1/01

**7267018**
**Page: 23 of 23**
05/31/2005 01:58PM

I hereby CERTIFY that this document is
recorded in the Recorder's Office of
Lehigh County, Pennsylvania

*Marie Dean*

Marie Dean
Recorder of Deeds

**ESCROW ADMINISTRATION SYSTEM**

# green tree

| | | | |
|---|---|---|---|
| LOAN ▮▮▮▮ PRIMARY BORROWER: PATRICK JULES - EAS LOAN STATUS: ACTIVE | | | Analysis Statement |

Close Window

| | | | |
|---|---|---|---|
| Analysis Date: | 12/11/2013 9:20:16 AM | Analysis Effective Date: | 2/1/2014 |
| Analysis Type: | ON DEMAND | Analysis Reason: | ANALYSIS RESEARCH |

## Annual Escrow Account History
### October-2012 Thru January-2014

**Current Payment Breakdown:**

| | | | |
|---|---|---|---|
| Projected Disbursements: | 0.00 | Prin & Interest | 757.42 |
| Actual Disbursements: | 4,886.95 | Escrow Payment | 457.91 |
| Projected Low Balance Point: | 0.00 | Non Escrow Payment | 0.00 |
| Actual Low Balance Point: | -1,276.73 | Total Payment | 1,215.33 |

| Date | Payments to Escrow Account | | | Payments from Escrow Account | | | | Escrow Balance | |
|---|---|---|---|---|---|---|---|---|---|
| Month-Year | Projected | Actual | Desc | Projected | Desc | Actual | Desc | Projected | Actual |
| | | | | | Starting Balance | | | | 153.74 |
| Oct-2012 | 0.00 | | PAYMENT | | | 0.00 | | | 153.74 |
| Nov-2012 | 0.00 | | PAYMENT | | | 0.00 | | | 153.74 |
| Dec-2012 | 0.00 | | PAYMENT | | | 0.00 | | | 153.74 |
| Jan-2013 | 0.00 | | PAYMENT | | | 0.00 | | | 153.74 |
| Feb-2013 | 0.00 | | PAYMENT | | | 0.00 | | | 153.74 |
| Mar-2013 | 0.00 | | PAYMENT | | | 0.00 | | | 153.74 |
| Apr-2013 | 0.00 | | PAYMENT | | | 0.00 | | | 153.74 |
| May-2013 | 457.91 | | PAYMENT | | | 709.02 | COUNTY | | -97.37 |
| Jun-2013 | 457.91 | | PAYMENT | | | 0.00 | | | 360.54 |
| Jul-2013 | 1,166.93 | | PAYMENT | | | 0.00 | | | 1,527.47 |
| Aug-2013 | 457.91 | | PAYMENT | | | 3,118.01 | SCHOOL | | -1,132.63 |
| Sep-2013 | 457.91 | | PAYMENT | | | 0.00 | | | -674.72 |
| Oct-2013 | 457.91 | | PAYMENT | | | 1,059.92 | HAZARD/FIRE | | -1,276.73 LP |
| Nov-2013 | 0.00 | | PAYMENT | | | 0.00 | | | -1,276.73 |
| Dec-2013 | 0.00 | | PAYMENT | | | 0.00 | | | -1,276.73 |
| Jan-2014 | 0.00 | | PAYMENT | | | 0.00 | | | -1,276.73 |
| TOTALS | 3,456.48 | | | | | 4,886.95 | | | |

## Annual Escrow Account Projections
### February-2014 Thru January-2015

| Date | Payments to Escrow Account | Payments from Escrow Account | | Escrow Balance | |
|---|---|---|---|---|---|
| Month-Year | Projected | Projected | Description | Projected | Required |
| | | | Starting Balance | -1,276.73 | 1,790.78 |
| Feb-2014 | 407.25 | 0.00 | | -869.48 | 2,198.03 |
| Mar-2014 | 407.25 | 0.00 | | -462.23 | 2,605.28 |
| Apr-2014 | 407.25 | 0.00 | | -54.98 | 3,012.53 |
| May-2014 | 407.25 | 709.02 | COUNTY | -356.75 | 2,710.76 |
| Jun-2014 | 407.25 | 0.00 | | 50.50 | 3,118.01 |
| Jul-2014 | 407.25 | 0.00 | | 457.75 | 3,525.26 |
| Aug-2014 | 407.25 | 3,118.01 | SCHOOL | -2,253.01 | 814.50 |
| Sep-2014 | 407.25 | 0.00 | | -1,845.76 | 1,221.75 |
| Oct-2014 | 407.25 | 0.00 | | -1,438.51 | 1,629.00 |
| Nov-2014 | 407.25 | 1,059.92 | HAZARD/FIRE | -2,091.18 | 976.33 |
| Dec-2014 | 407.25 | 0.00 | | -1,683.93 | 1,383.58 |
| Jan-2015 | 407.25 | 0.00 | | -1,276.68 | 1,790.83 |

Projected Escrow Disbursements:     Base Escrow Payment     407.25

| | | | |
|---|---|---|---|
| COUNTY | 709.02 | Shortage Payment | 49.74 |
| SCHOOL | 3,118.01 | Deficiency Payment | 35.46 |
| HAZARD/FIRE | 1,059.92 | Surplus Repayment | 0.00 |
| Total Disbursements: | 4,886.95 | New Escrow Payment | 492.45 |
| Shortage | -1,790.78 | | |
| Shortage Spread | 36 | Prin & Interest Payment | 757.42 |
| Deficiency | -1,276.73 | | |
| Deficiency Spread | 36 | | |
| Total Surplus | 0.00 | New Escrow Payment | 492.45 |
| Corporate Advances | 0.00 | | |
| Result | None | | |
| Customer | 0.00 | Non Escrow Payment | 0.00 |
| Surplus Result | Not Applicable | | |
| Surplus Override | N | Total Payment | 1,249.87 |
| Cushion | 814.50 | | |

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:  Patrick Jules,                :        Bankruptcy 13-20166
                                      :
           Debtor.                    :        Chapter 13

### CHAPTER 13 PLAN

The Debtor submits the following Chapter 13 Plan and makes the following declarations:

I.    PROPERTIES AND FUTURE EARNINGS OR INCOME
       SUBJECT TO THE SUPERVISION AND CONTROL OF THE
       TRUSTEE

The Debtor submits the following to the supervision and control of the Trustee:

1.    Payment period:                                Monthly

       Length of Plan:                               36 months

       Amount Payable to Trustee for expenses        Statutory Allowances

       Amount to be paid to Barton Knochenmus, Esq.  $ 2,500.00

       Amount of Plan to Loancare Servicing Center   $10,000.00

       Total Amount of Secured & Priority Claims     $12,500.00

       Total Amount of Plan, including Trustee Charges  $14,641.00

       Amount of monthly payment                     $   394.00

2.    Payor to be:                                   Debtor

3.    Other property:                                None

II.   TREATMENT OF CLAIMS

4.    Class One:  Debtor shall pay in full, in deferred cash payments, all allowed claims

entitled to priority under 11 U.S.C. § 507, including:

       Trustee to receive:  Statutory Allowances

       Attorney's fees to be paid through the Plan:  $2,500.00

5.      Class Two: Claims filed and allowed which are secured by a lien which are not avoidable by the Debtor under 11 U.S.C. 522: Class two creditors will retain their liens until their allowed secured claims are paid in full, and shall be deemed to have accepted this Plan unless they timely object to the Plan.  Arrears owed to mortgage lender Loancare Servicing Center will be paid through the Plan and the current monthly mortgage payments will be paid outside the Plan.  Post-petition mortgage payments on Debtor's residential real estate shall be paid directly by Debtor to Loancare Servicing Center, Interstate Corp Contr Bld, Norfolk, Virginia 23502, or such other address as Loancare Servicing Center, or their successor-in-interest, shall direct.

6.      Allowed unsecured claims not otherwise referred to in the Plan shall be treated as follows:  Allowed unsecured claims are of one class and shall be paid pro rata, if any funds are available, from Plan payments.

III.    OTHER PROVISIONS

7.      The following executory contracts and unexpired leases are rejected:  None.

8.      On the Chapter 13 Petition filing date, the following creditor(s) had a judicial lien upon exempt property of Debtor: Susquehanna Bank; Discover Bank.

9.      The value, as of the date of the filing of the Plan, of property to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

10.     The following claim is excluded, in whole as indicated, and not provided for by the Plan:  None.

11.     The Debtor will be able to make all payments and comply with all provisions of the Plan, based upon the availability to the Debtor of the income and property the Debtor

Case 5:13-bk-20166-ref Doc 62-8 Filed 02/08/17 Entered 02/08/17 04:59:42 Desc Main
Exhibit D Chapter 13 Plan Page 3 of 4
Case 4-20166-ref Doc 28 Filed 02/08/17 Entered 02/08/17 10:46:11 Desc Main
Document Chapter 13 Plan Page 43 of 45 Page 3 of 4

proposes to use to complete this Plan. The Debtor is reasonably assured that said income and

property is, and will continue to be, available to make the payments and complete the Plan.

12.     This Plan complies with the provisions of Chapter 13 and all other applicable

provisions of Title 11 of the United States Code. Any fee, charge, or amount required to be paid

under Chapter 123 of Title 28 of the United States Code or required by the Plan to be paid before

confirmation has or will be paid prior to confirmation. The Plan is proposed in good faith and is

not in any respect forbidden by law.

13.     In the absence of written objection filed with the Court and served upon Debtor's

counsel and upon the Chapter 13 Trustee, and if applicable upon the U.S. Trustee, not less than

five (5) court days prior to the date fixed for the Hearing on Confirmation, the Court may

confirm this Chapter 13 Plan and accept the valuations and allegations asserted therein.

14.     The following creditor is in the process of being avoided, their lien shall be null

and void, and the debt declared unsecured and dischargeable: Susquehanna Bank; Discover

Bank.

IV.     REVESTMENT OF THE PROPERTY IN DEBTOR

15.     Property of the estate shall revest in Debtor upon Plan Confirmation.

V.      RETENTION OF LIEN

16.     Holders of allowed secured claims shall retain their liens until Debtor pays the

allowed claim in full.

    /s/ Barton Knochenmus, Esq.
Barton Knochenmus, Esq.
Attorney for Debtor
1275 Glenlivet Drive Suite 100
Allentown PA 18106-3107
610-770-3575

/s/ Patrick Jules
Patrick Jules, Debtor

Dated:  December 8, 2013

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| PATRICK JULES | : | BK. No. 13-20166 REF |
| A/K/A PATRICK G. JULES | : | |
| A/K/A PATRICK GREGORIE JULES | : | **Chapter No. 13** |
| Debtor | : | |
| | : | |
| **GREEN TREE SERVICING LLC, AS** | : | |
| **AUTHORIZED SERVICER OF FANNIE MAE, AS** | : | |
| **OWNER AND HOLDER OF** | : | |
| **ACCOUNT/CONTRACT ORIGINATED BY** | : | |
| **COUNTRYWIDE HOME LOANS, INC.** | : | |
| Movant | : | |
| v. | : | |
| PATRICK JULES | : | |
| A/K/A PATRICK G. JULES | : | |
| A/K/A PATRICK GREGORIE JULES | : | |
| Respondent | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that service upon all interested parties, indicated below was made by sending a true and correct copy of the Objection of **GREEN TREE SERVICING LLC, AS AUTHORIZED SERVICER OF FANNIE MAE, AS OWNER AND HOLDER OF ACCOUNT/CONTRACT ORIGINATED BY COUNTRYWIDE HOME LOANS, INC.** , to Debtor's Chapter 13 Plan pursuant to the above-captioned bankruptcy case by first-class mail or by electronic means on March 27, 2014.

FREDERICK L. REIGLE, ESQUIRE (TRUSTEE)          PATRICK JULES
2901 ST. LAWRENCE AVENUE                        PO BOX 637
P.O. BOX 4010                                   OREFIELD, PA 18069
READING, PA 19606

BARTON KNOCHENMUS, ESQUIRE
KNOCHENMUS LAW FIRM
1275 GLENLIVET DRIVE, SUITE 100
ALLENTOWN, PA 18106

UNITED STATES TRUSTEE
833 CHESTNUT STREET
SUITE 500
PHILADELPHIA, PA 19107

                                                Respectfully submitted,

                                                /s/ Troy Sellars, Esquire
                                                Troy Sellars, Esq., Id. No.210302
                                                Phelan Hallinan, LLP
                                                1617 JFK Boulevard, Suite 1400
                                                One Penn Center Plaza
                                                Philadelphia, PA 19103
                                                Phone Number: 215-563-7000 Ext 1360
                                                Fax Number: 215-568-7616
Dated: March 27, 2014                           Email: troy.sellars@phelanhallinan.com